UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-80022-AMC

UNITED STATES OF AMERICA

v.

MICHAEL ROZENBERG,

      Defendant.

**SUPPLEMENTAL BRIEF PURSUANT TO THE ORDER
REQUIRING SUPPLEMENTAL BRIEFING CONCERNING THE
SECOND MOTION FOR PRELIMINARY ORDER OF FORFEITURE**

Pursuant to the Order Requesting Supplemental Briefing [ECF No. 1009] dated February 1, 2024, the United States of America (the "United States") files this Supplemental Brief concerning the United States' Second Motion for Preliminary Order of Forfeiture [ECF No. 915], and states:

**SUPPLEMENTAL BRIEF**

Section 853(p) was enacted to address "one of the most serious impediments to criminal forfeitures". *United States v. Fleet*, 498 F.3d 1225, 1230 (11th Cir. 2007) (citing S. Rep. No. 98–225, at 201–02, 212 (1983), *as reprinted in* 1983 U.S.C.C.A.N. 3182, 3384–85, 3395). Prior to its enactment, a defendant could avoid forfeiture simply by "transferring his assets to another [person] ... or taking other actions to render his forfeitable property unavailable at the time of conviction". *Id.* Congress enacted Section 853 to enforce the "the old adage that crime does not pay" and mandated that Section 853 "shall be liberally construed to effectuate [this] remedial purposes." *Id.* (citing *United States v. Monsanto*, 491 U.S. 600, 614 (1989) (quotation marks omitted); 21 U.S.C. 853(o)). "That remedial purpose would be undermined if Section 853(p) was construed in a way

that allowed convicted defendants to evade its provisions . . . ." *Id.* It is against this backdrop that the Court should consider the issues raised.

1. **Does the Government object to the Court's consideration, in connection with this Motion, of the Joint Venture Agreement (DE 1003-1)? If so, on what basis?**

Yes. Although the Joint Venture Agreement ("the Agreement") does not change the analysis, the United States respectfully submits that it should not be considered by the Court. Defendant Michael Rozenberg did not seek leave from the Court to file this document after the Second Motion was fully briefed and a hearing was held, nor has he offered any explanation as to why it could not have been timely filed. By his counsel's own admission, Defendant was in possession of this document at all relevant times and on notice of the United States' intent not to pursue forfeiture of the alleged investment since at least October 2023. Consideration of the late-filed document would prejudice the United States, as briefing has been completed for approximately one month and a hearing has already been held on the issues raised in the Second Motion. Further, consideration of this document would further delay and unnecessarily complicate the United States' efforts to pursue forfeiture in this case, which is contrary to the intent of Section 853. *See United States v. Fleet*, 498 F.3d 1225, 1230 (11th Cir. 2007); 21 U.S.C. 853(o). Lastly, permitting consideration of untimely evidence without a showing of good cause or excusable neglect would have serious implications for all cases, rendering the briefing schedule and deadlines set forth in the rules meaningless and arbitrary.

2. **Can the Government legally take title to a joint venture interest in a commercial cannabis business? If not, how does this impact the substitute property provisions of § 853(p)?**

To fully answer this hypothetical, the United States would need additional information on what steps would need to be taken to liquidate the alleged interest and if it could be done, whether any of these steps would involve the violation of federal law. In theory, there is no prohibition that

would prevent the United States from taking title to such an interest and liquidating the interest if it could be liquidated as long as doing so would not run afoul of federal law.[1] However, the issue here is not whether the government can take title to the interest, but whether the government is required to take title where the United States has put forth an unrefuted declaration tracking the statutory language. *See United States v. Javat*, 2022 WL 703940, at *5 (11th Cir. Mar. 9, 2022) ("As the district court noted, the agent's declaration 'simply track[ed] the statutory language without providing further details regarding how the Government determined that [Javat] has made the tainted property unavailable.' … Here, the agent's declaration is no less specific than the one we approved in *Seher*. The agent's declaration was sufficient for the district court to rely on in concluding that the government had met its burden to show that section 853(p)(1)'s requirements were met."); *accord United States v. Seher*, 562 F.3d 1344, 1373 (2009).[2]

Under Section 853(p), the United States is entitled to pursue forfeiture of substitute property if any of the directly traceable property has been transferred to a third party. It is undisputed in this case that the directly traceable property (i.e. the fraud proceeds) was transferred to a third party (King Garden). 21 U.S.C. § 853(p)(1)(B). Therefore, pursuant to this factor alone, the United States is permitted to pursue forfeiture of "any other property of the defendant". 21 U.S.C. § 853(p)(2). The United States is not required to pursue this property over other property

---

1 At the hearing, the Defendant suggested that the United States could operate a marijuana business, because it previously operated a prostitution ring. Assuming, *arguendo*, this was true, it would be of no consequence for this case, because there is no federal statute prohibiting prostitution *per se*, unlike the manufacture and distribution of marijuana, which is criminalized under Title 21, United States Code, Sections 841 and 846. Because marijuana is illegal under federal law, the federal government cannot legally operate a commercial marijuana business.

2 Defendant's suggestion that there should be a "heightened" burden in this case is not supported by the law. It is, therefore, not surprising that Defendant has failed to cite any legal authority to support this contention. Not only is legal authority noticeably absent from the record, but this interpretation is contrary to Eleventh Circuit law

that the Defendant owns. *See United States v. Knowles*, No. 19-14309, 2020 WL 3583413, at *1 (11th Cir. July 2, 2020) ("We've held that the word 'any' in § 853(p) is a broad word that 'does not mean some or all but a few, but instead means all . . . .'") (citing *United States v. Fleet*, 498 F.3d 1225, 1229 (11th Cir. 2007)).[3]

The United States also met its burden in showing it is entitled to pursue forfeiture of substitute property on the basis that the proceeds have been substantially diminished in value. *See* 21 U.S.C. § 853(p)(1)(D). The Defendant failed put forth evidence to rebut the United States's sworn declaration on this issue, and there is no evidence that the interest Defendant acquired pursuant to the Agreement could be liquidated for any significant value. Accordingly, the Court should also determine that the United States also met its burden with respect to this factor, regardless of whether the Court considers the late-filed Agreement.

3. **How does section 4.3 of the Joint Venture Agreement impact the substitute property provisions of § 853(p)? Must the Government make an evidentiary showing that Defendant's cannabis partners will not consent to the transfer of his interest to the Government?**

The Court should not consider the Agreement for the reasons set forth above. However, even if the Court were to consider the Agreement, it should find that it has no impact on 853(p). The United States met its burden when it filed the sworn declaration of FBI Agent Rodriguez. *See United States v. Javat*, 2022 WL 703940, at *5 (11th Cir. Mar. 9, 2022); *accord United States v. Seher*, 562 F.3d 1344, 1373 (2009). The sworn declaration is unrefuted that the directly traceable fraud proceeds were transferred to a third party. The general provision in Section 4.3 of the Agreement does nothing to rebut this. Further, the Agreement does nothing to rebut the fact that

---

3 Further, delaying the government's forfeiture of certain assets could result in the dissipation of assets and irreparable harm to the United States, particularly if the assets are returned to the Defendant pending the final forfeiture.

4

the resulting interest that the Defendant obtained has *not* substantially diminished the value of the proceeds. There is no record evidence that the interest can be liquidated for any value, and therefore, no evidence to rebut the statement in the sworn declaration that the property has been substantially diminished in value. Whether the partners would consent to the transfer to the United States is irrelevant, because the United States is not required to pursue this property where the directly forfeitable property has been transferred to a third party or has been substantially diminished in value. *See* 21 U.S.C. § 853(p).

4. **How does § 853(h) impact this case? If the Government chooses to pursue forfeiture of Defendant's joint venture interest, won't Defendant's interest "expire" because it is not "transferable" to the Government, resulting in a windfall to Defendant's joint venture partners?**

Section 853(h) has no application here. It concerns the "seizure of property ordered forfeited". *See* 21 U.S.C. § 853(h). The alleged interest in the Joint Venture has not been seized or forfeited, and the United States does intend to pursue this alleged interest for the reasons discussed. The United States respectfully submits that what happens to the Defendant's interest should be governed by the terms of the Agreement.

5. **As the Government has noted, § 853(p)(2) allows for the forfeiture of "any" substitute property. But it does so only "up to the value" of missing, directly forfeitable property. The record here contains scant evidence as to the value of the Defendant's interest in the directly forfeitable property and the value of the proposed substitute property. Should the Court set an evidentiary hearing on these relative values before ordering forfeiture of family heirlooms as "substitute property"? See United States v. Faulk, 340 F. Supp. 2d 1312, 1315 (M.D. Ala. 2004) (noting that § 853(p)(2) "allows for the substitution of property only up to the value of the original forfeited property" and ordering the Government to provide "evidence that the substitute property's total value does not exceed the amount of the original money judgment").**

The "up to the value" provision relates to the limitation on the final amount forfeited and does not preclude the government from taking steps to forfeit substitute property, including a preliminary order of forfeiture. After the preliminary order is entered, under 21 U.S.C. § 853(n),

5

third parties will be able to assert a claim to the substitute property and, thus, the ultimate amount forfeited will not be determined until after any third-party ancillary proceeding. *See* 21 U.S.C. § 853(n); Fed. R. Crim. P. 32(c); *see also United States v. Kitchen*, No. 2009 WL 728498, 2009 WL 728498, *1 (D. Utah Mar. 19, 2009) (making no distinction between directly forfeitable property and substitute assets in holding that ownership issues must be deferred to the ancillary proceeding per Rule 32.2(b)(2)).

It is impossible for the Court to determine the actual amount that will be finally forfeited in this case until after the ancillary proceeding in which third party claims are addressed. *See also United States v. Sperrazza*, No. 1:12–CR–6 (WLS), 2014 WL 5310545, *3 (M.D. Ga. Oct. 16, 2014), *aff'd*, 804 F.3d 1113 (11th Cir. 2015) (value of substitute asset did not exceed amount of forfeiture money judgment because its appraised value may be reduced by the cost to government of maintaining and selling the property). Therefore, an evidentiary hearing would be meaningless at this stage. Further, an evidentiary hearing would not be useful in determining whether to order the forfeiture of the alleged family heirlooms, because the United States is permitted under 853(p) to pursue forfeiture of *any* substitute property and is not required to pursue forfeiture of certain assets before others. *See United States v. Knowles*, No. 19-14309, 2020 WL 3583413, at *1 (11th Cir. July 2, 2020).

6. **In the event the Court orders forfeiture of Listed Property, and the Government thereafter sells that property pursuant to § 853(h), what happens to any "leftover" items of property once the Government hits the full amount of the money judgment?**

In the event the restrained property exceeds the amount of the forfeiture money judgment, the United States will petition the Court to turnover the property and/or funds to the Clerk of the Court to be applied to the Defendant's approximately $25 million criminal restitution judgment. *See* 18 U.S.C. § 3613(c). Pursuant to Section 3613(c), restitution has a lien that arises when the

judgment is entered on all property or interests in property owned by the Defendant. *Id.* In the event the Petition is denied, the United States will return any excess funds to the Defendant and his wife, Defendant Galina Rozenberg.

7. **Which specific items among the list Listed Property does Defendant contend constitute family heirlooms?**

Although this question appears to be directed to the Defendant, the Court should be aware that the government did return the wedding bands and a locket with the Defendant's son's picture to the Defendant's wife, Defendant Galina Rozenberg.

8. **Does either party believe a further evidentiary hearing is required? If so, on what issues?**

The United States respectfully submits that an evidentiary hearing is *not* appropriate in this case, as there is no issue of fact for the Court to address. An evidentiary hearing is warranted only if there are disputed issues of fact that must be resolved to adjudicate the motion. The United States put forth a sworn declaration that is sufficient under Eleventh Circuit law to show that the forfeiture of substitute assets is permitted, and the Defendant has not put forth any evidence to rebut this declaration. Accordingly, there is no issue of fact that would warrant an evidentiary hearing, and an evidentiary hearing should not be used to create an issue of fact where one does not otherwise exist. *See United States v. Five Hundred Thousand Dollars*, 730 F.2d 1437, 1440 (11th Cir. 1984) (citing *Thomas v. United States*, 681 Fed.Appx. 787, 790 (11th Cir. 2017) (recognizing the district court aptly declined to hold an evidentiary hearing where there "were no questions of fact to be resolved."). *United States v. Five Hundred Thousand Dollars*, 730 F.2d 1437, 1440 (11th Cir. 1984) ("The district court did not fail to hold an evidentiary hearing on the issue of standing as there were no questions of fact to be resolved."); *United States v. Jackson*, 2011 WL 2262922, at *1 (S.D. Ala. 2011) ("The Court's review of the parties' filings does not reveal any disputed issue

of fact that might warrant an evidentiary hearing."). Further, an evidentiary hearing would waste considerable resources and time, and also frustrate the remedial purpose of the forfeiture statute.

Respectfully submitted,

                                       MARKENZY LAPOINTE
                                       UNITED STATES ATTORNEY

By:   /s/ Sara M. Klco
       Sara M. Klco
       Assistant United States Attorney
       Asset Forfeiture Division
       (305) 961-9165
       Sara.Klco@usdoj.gov

       */s/ Marx P. Calderón*
       Marx P. Calderón
       Court ID No. A5502700
       Assistant United States Attorney
       99 N.E. 4th Street, 7th Floor
       Miami, Florida 33132-2111
       Telephone: (305) 961-9036
       Marx.calderon@usdoj.gov

       *Counsel for United States of America*